Ernest Edward Badway, Esq.
Fox Rothschild LLP
101 Park Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 878-7900
Facsimile: (212) 692-0940

Mark A. Goodman, Esq.
Mark A. Platt, Esq.
Michael H. Borofsky, Esq.
Fox Rothschild LLP
Two Lincoln Centre
5420 LBJ Fwy., Suite 1200
Dallas, Texas 75240
Telephone: (972) 991-0889
Facsimile: (972) 404-0516

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MASTER CALL CONNECTIONS, LLC,<br><br>    Plaintiff,<br><br>– against –<br><br>WDT WORLD DISCOUNT TELECOMMUNICATIONS CO., INC., WDT WIRELESS COMMUNICATIONS, INC., WDT POLSKA, ALLVOITEL, INC., ALLVOI, INC., ROMAN TALIS and ANDREW PLOCIENNICZAK,<br><br>    Defendants. | Civil Action No.: 16-cv-9141-RWS<br><br>Judge: Robert W. Sweet, U.S.D.J.<br><br>**Via ECF** |

**MEMORANDUM OF LAW IN SUPPORT OF SELLER DEFENDANTS'
MOTION TO DEPOSIT FUNDS INTO COURT AND RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Table of Contents

PRELIMINARY STATEMENT .................................................................................................. 5

FACTUAL BACKGROUND ...................................................................................................... 5

LEGAL ARGUMENT .................................................................................................................. 6

I.   The Court should deny Master Call's request for a preliminary injunction. ......................... 7

   A.  Master Call has not shown irreparable harm. ..................................................................... 7

      (i)   Master Call's bankruptcy is avoidable, and thus not likely, actual, and imminent. ....... 7

      (ii)  Master Call is attempting to avail itself of the benefits, but not assume the obligations, of bankruptcy. ........................................................................................................ 9

   B.  Master Call has not shown a likelihood of success on the merits of its claims. ................. 11

      (i)   Fraudulent Inducement .................................................................................... 11

      (ii)  Breach of Contract ........................................................................................... 12

   C.  Master Call has neither raised "serious questions" nor shown that the balance of hardships tips decidedly in favor of issuing the injunction. ............................................................... 13

   D.  Master Call must post a bond if the Court issues the injunction. ...................................... 14

II.  If the Court issues the injunction, then it should require Master Call to post a bond and deposit the escrowed funds with the Court. ........................................................................... 16

CONCLUSION ............................................................................................................................ 18

Table of Authorities

**Cases**

*Atomic Oil Co. of Okla. v. Bardahl Oil Co.*, 419 F.2d 1097, 1100–01 (10th Cir. 1969)........ 13, 15

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*,
   934 F.2d 30, 34 (2d Cir. 1991)................................................................................................ 7

*Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867, 874 (2d Cir. 1971)...... 8

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30, 35 (2d Cir. 2010)............................................................................................ 6, 12

*Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) ............................................................ 6

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ............................................................................. 9

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) .......................................... 7

*John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 588 F.2d 24, 29 (2d Cir. 1978) ............... 8

*John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24, 28-29 (2d Cir. 1978)..... 9

*JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990) ....................................... 7

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 927 N.Y.S.2d 517, 530 (Sup. Ct. 2011)....... 10

*Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.),
   *opinion amended on denial of reh'g,* 209 F.3d 1032 (7th Cir. 2000) ................................ 14, 16

*Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 558 (2d Cir. 2011)...................................... 13, 15

*Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). ...................................................... 11

*Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) ....................... 11

*Sperry Intern. Trade, Inc. v. Government of Israel*, 670 F.2d 8 (2d Cir. 1982) ............................ 7

*Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) .............................................................. 6

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) .......................... 8

**Statutes**

11 U.S.C. § 362, House Report No. 95-595 ................................................................................... 9

**Rules**

Fed. R. Civ. P. 65 .................................................................................................................... 13, 15

Fed. R. Civ. P. 67 ......................................................................................................................... 17

Defendants WDT World Discount Telecommunications Co., Inc., WDT Wireless Communications, Inc., WDT Polska, Allvoitel, Inc. and Allvoi, Inc. (collectively, "WDT" or "Seller Defendants"), respectfully submit this memorandum of law in support of its motion to deposit funds into court and response to plaintiff Master Call Connections, LLC's ("Plaintiff" or "Master Call") motion for preliminary injunction.

## PRELIMINARY STATEMENT

Master Call asks this Court to enjoin WDT from exercising its right to foreclose on Master Call's assets, after Master Call defaulted on its promise to make monthly payments of $100,000 to WDT. The alleged basis for the injunction is that foreclosure will cause Master Call to go bankrupt, which Master Call claims is an irreparable injury. But Master Call is only threatened with this potential injury because it chooses to be. If Master Call resumed its monthly payments to WDT—rather than paying the money into escrow, as it is currently doing—then WDT would not foreclose on its collateral, and Master Call's injury would be strictly monetary. The Court should grant an injunction only where irreparable harm is likely, actual, and imminent. In this case, the irreparable harm is entirely avoidable. Thus, the Court should deny the injunction. But in the event the Court issues the injunction, Master Call should be required to post a bond and deposit its escrowed funds with the Court.

## FACTUAL BACKGROUND

Master Call filed this lawsuit on December 2, 2016 on the purported basis that WDT had breached an asset purchase agreement ("APA") and related agreements that Master Call and WDT had executed on or about January 1, 2016. WDT answered and counterclaimed that it is Master Call who has breached the APA and related agreements. Master Call initially sought, among other relief, a declaratory judgment that it is excused from performing under the APA and related

5

agreements, including a $4,020,000 secured promissory note ("Note") and pledge and security agreement ("Security Agreement"), both of which were entered into with Master Call as payor and WDT as payee.

Despite initially asking this Court for declaratory relief, Master Call has taken it upon itself to stop making the $100,000 monthly payments required under the Note. Although Master Call made its payments due under the Note for the first two months after filing this lawsuit, it unilaterally decided to stop all payments to WDT, thus depriving WDT of necessary and agreed-upon income. Master Call's failure to pay is a clear event of default under the Note, which (a) renders the entire unpaid balance on the Note of $2,820,000 due and payable without notice or demand, and (b) gives rise to other contractual and legal remedies.

Among WDT's rights upon default is nonjudicial foreclosure of its collateral under the UCC. Although neither the Note nor the Security Agreement requires WDT to provide any notice before exercising this right, out of an abundance of caution WDT sought an order from this Court authorizing it to foreclose on its collateral and exercise any and all other remedies available under the Note and the Security Agreement.

Master Call now asks this Court to issue a preliminary injunction preventing WDT from exercising its foreclosure rights, even though less drastic and equally effective remedies are available. For the reasons discussed below, Master Call's request for a preliminary injunction should be denied.

## LEGAL ARGUMENT

Master Call asks this Court to enjoin WDT from exercising its right to foreclose on its collateral, after Master Call defaulted on the Note and Security Agreement by failing to make required monthly payments. The Court should deny this request because Master Call has not met

its burden to justify this extraordinary equitable relief. The threat of irreparable harm is avoidable and thus not likely, actual, or imminent. Additionally, the request for an injunction is an improper attempt by Master Call to avail itself of bankruptcy-type protection without submitting itself to the obligations inherent in the bankruptcy process. Alternatively, if the Court issues the injunction, then Master Call should be required to post a bond in the amount of $2,220,000 and deposit with the Court the $600,000 that is currently escrowed.

## I.   The Court should deny Master Call's request for a preliminary injunction.

The Court should deny Master Call's request for an injunction because Master Call cannot establish irreparable harm, likely success on the merits of its claims, or that the balance of hardships decidedly favors issuing the injunction.

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing,* carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (emphasis original). In the Second Circuit, a court should deny a request for a preliminary injunction unless the movant clearly proves "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

### A.   Master Call has not shown irreparable harm.

*(i) Master Call's bankruptcy is avoidable, and thus not likely, actual, and imminent.*

Master Call cannot prove irreparable harm because the threat of bankruptcy is not likely, actual, and imminent. "It is well established that an irreparable injury is … not remote or speculative but actual and imminent." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011). A movant "must show that it is *likely* to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v.*

7

*Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990) (emphasis in original). "[A] mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991).

Master Call's threatened bankruptcy is not likely, actual, and imminent, because the threat is avoidable and solely self-inflicted. Master Call has refused to make required payments to WDT, which has forced WDT to seek foreclosure on its collateral. But if Master Call begins making the payments to WDT, rather than withholding them, then WDT would not foreclose and Master Call would not be threatened with bankruptcy. Additionally, if Master Call is successful in this litigation, it will be able to recover its payments through a money judgment. Because Master Call can take action that would eliminate the threat of bankruptcy—and convert the alleged irreparable harm into a monetary one—the threat of irreparable harm is not likely, actual, and imminent. On the contrary, it is entirely avoidable. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) (observing that irreparable harm was unlikely because the movant could avoid the alleged harm by obtaining a loan, which could then be recompensed after trial).

Furthermore, Master Call's threat of bankruptcy is speculative because there is a complete lack of evidence of its financial condition. In *Sperry Intern. Trade, Inc. v. Government of Israel*, 670 F.2d 8 (2d Cir. 1982), the court refused to find irreparable harm because the movant's evidence of imminent bankruptcy was inadequate:

> There was no elaboration whatsoever of the nature of the alleged cash flow problems, nor any suggestion that they could not be alleviated in some way …. To the extent that [the district court] intended to cast Sperry's overall financial condition in a light of imminent bankruptcy, [the evidence] was wholly inadequate to justify the granting of injunctive relief.

Here, Master Call makes the conclusory claim that if WDT forecloses on its collateral, then "Master Call's debts will exceed the value of its assets … [and] Master Call will be bankrupt." (Dkt No. 54, p. 9). Yet, Master Call has provided no evidence of its current assets and liabilities,

8

and without such evidence, any threat of insolvency is speculative. Because the Court cannot conclude that Master Call's insolvency is likely and imminent on this record, the request for an injunction should be denied. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (finding irreparable harm only upon "ample evidence … of imminent bankruptcy"); *see also John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 588 F.2d 24, 29 (2d Cir. 1978) (requiring sufficient evidence to support the claim that the company would go bankrupt).

> *(ii) Master Call is attempting to avail itself of the benefits, but not assume the obligations, of bankruptcy.*

Master Call claims that it will suffer irreparable harm because, if WDT forecloses, then Master Call will go bankrupt. Although the Second Circuit has held that the threat of imminent bankruptcy may constitute irreparable harm in some circumstances, it has never considered the issue where a plaintiff seeks to enjoin foreclosure on its assets in lieu of paying a creditor it capable of paying. Nearly every case where imminent bankruptcy constituted irreparable harm involved a plaintiff seeking an injunction against a potentially insolvent defendant. In those cases, it was the plaintiff's inability to be made whole by a money judgment against a potentially bankrupt defendant that amounted to an irreparable injury. *See Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867, 874 (2d Cir. 1971) (holding that a defendant's insolvency did not constitute irreparable injury where the plaintiff's claim in bankruptcy would receive priority and the defendant would give security by making escrow payments to a bankruptcy trustee). In the few cases where the plaintiff was seeking an injunction to prevent its own bankruptcy, the automatic bankruptcy stay would not have provided the plaintiff with the same relief sought by the injunction—like it would in this case. Thus, Master Call overstates the law by suggesting that the threat of bankruptcy always constitutes irreparable harm: The Second Circuit has not addressed

9

the issue in this context, and the reasoning that has justified injunctions in prior cases is inapplicable here.

When a party seeks to enjoin foreclosure on its assets to prevent it from going insolvent—as in Master Call's case—the threat of bankruptcy does not justify an injunction, because the automatic bankruptcy stay provides the movant with the exact injunctive relief it is seeking. Thus, the cases where the court has enjoined conduct that threatened to put the movant in bankruptcy are distinguishable. For example, in *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, the court found that the defendant was likely engaging in anti-competitive practices, which threatened to force the plaintiff out of business; in that case, a bankruptcy stay would not have stopped the defendant's anti-competitive behavior. *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24, 28-29 (2d Cir. 1978). Similarly, in *Doran v. Salem Inn, Inc.*, bar owners sought to enjoin the enforcement of a town ordinance that would put the bars into bankruptcy; but in that case, a bankruptcy stay would not have enjoined enforcement of the ordinance. *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975).

Courts have never held that the threat of bankruptcy justifies enjoining the lawful foreclosure of assets, and for this Court to do so would undermine the bankruptcy scheme. A primary purpose of the automatic bankruptcy stay is to protect the debtor from creditors attempting to foreclose on the debtors assets. 11 U.S.C. § 362, House Report No. 95-595. If a debtor could obtain this stay in the form of a preliminary injunction, by showing a district court that it would otherwise be required to file for bankruptcy, then debtors would be able to circumvent the bankruptcy code. Not only would it allow a debtor to reap the benefits of filing for bankruptcy while avoiding the obligations, but also it would deny creditors certain rights regarding their collateral that are available only in a

bankruptcy forum. In sum, there is no precedent to support Master Call's argument, and there are strong policy reasons to reject it.

B. <u>Master Call has not shown a likelihood of success on the merits of its claims.</u>

Master Call has not shown a likelihood of success on any of its claims. Master Call pleaded numerous counts in its Verified Complaint, but it has only argued a likelihood of success on its fraudulent inducement and breach of contract claims.

*(i) Fraudulent Inducement*

Master Call has not met its burden to prove a likelihood of success on each element of its fraudulent inducement claim. "The elements of a claim for fraudulent inducement are: (1) a false representation of material fact, (2) known by the utterer to be untrue, (3) made with the intention of inducing reliance and forbearance from further inquiry, (4) that is justifiably relied upon, and (5) results in damages." *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 927 N.Y.S.2d 517, 530 (Sup. Ct. 2011).

Master Call cannot prove it is likely that WDT knowingly made a false representation of material fact that resulted in damages. Master Call claims that WDT "made misrepresentations of material facts to Master Call by significantly overstating the total average monthly minutes used by [WDT's] customers." (Dkt No. 54, p. 11). Specifically, Master Call claims WDT represented that the average monthly minutes from June 2015 to September 2015 were 21,525,500, but the actual average monthly minutes were 16,666,896. Master Call does not explain how it calculated the average monthly minutes to be 16,666,896, which prevents WDT from providing a potentially obvious explanation for this alleged discrepancy.

Master Call claims that WDT's inclusion of a footnote in Schedule F, which clarified that the 21,525,500 figure was comprised of originating and terminating minutes, evidences a fraudulent representation. Yet, Master Call cannot explain when, where, or how WDT gave Master Call

11

reason to believe that the 21,525,500 figure consisted of anything other than originating and terminating minutes. It is common industry practice to include both originating and terminating minutes in the average monthly minutes calculation. Thus, an assumption that the figure represented anything else would be unreasonable without information to the contrary.

But even assuming Master Call established that WDT misrepresented the minutes figure, and that the actual average monthly minutes were 16,666,896, Master Call cannot prove that this misrepresentation resulted in damages. In addition to average monthly minutes, WDT represented its average revenue on Schedule F. Yet, Master Call has not alleged that the company generates less revenue than promised. Without evidence of damages, Master Call cannot succeed on its fraudulent inducement claim.

### *(ii) Breach of Contract*

Master Call has not met its burden to prove a likelihood of success on each element of its breach of contract claim. The elements for breach of contract under New York law are: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). "[A] party's performance under a contract is excused where the other party … has committed a material breach." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016). "Whether a failure to perform constitutes a material breach turns on several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract." *Id.*

Master Call alleges that WDT breached its contract by: (1) making fraudulent misrepresentations about minutes; (2) failing to cause the shareholders of PT Communications to convey its common stock to Master Call; (3) failing to turn over accounts receivable proceeds; (4) failing to turn over certain business cycle revenues under the Allocation Formula; (5) failing to

provide consulting services; (6) inserting undisclosed contracts in the Schedule of contracts to be assumed and assigned; and (7) refusing to turn over the assets of WDT Polska. (Dkt No. 54, p. 15-16).

To prove these breaches, Master Call offers only the bald allegations above. It has provided no evidence from which the Court can determine that it is more likely than not WDT committed a breach. And even if one of the above breaches were established—which WDT denies—Master Call has not shown why the breach is material and excuses Master Call's performance. One consideration of materiality is the degree to which Master Call has benefitted under the contract, and Master Call continues to receive the full benefit of the contract while WDT is being harmed by Master Call's nonperformance.

### C. Master Call has neither raised "serious questions" nor shown that the balance of hardships tips decidedly in favor of issuing the injunction.

"The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). "Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." *Id.* (emphasis in original).

Master Call contends, without explanation, that there are sufficiently serious questions going to the merits of its claims. (Dkt No. 54, p. 19). But the current record consists of conclusory allegations and no evidence. Unsubstantiated allegations cannot raise serious questions about liability. WDT has provided evidence that it neither made fraudulent representations nor

13

committed a material breach of contract, and thus the Court should find that on this record there are no serious questions about the merits of Master Call's claims.

Additionally, the balance of hardships does not tip "decidedly" in Master Call's favor. If the Court denies the injunction, Master Call has two options to avoid any alleged irreparable harm. First, Master Call can resume its required payments to WDT. This would prevent WDT from foreclosing on Master Call's assets and allow Master Call to recover any excess or wrongful payments through a money judgment. Second, Master Call can file for bankruptcy, which would enjoin WDT's foreclosure and place it in a forum designed to protect it from creditors. These alternatives substantially mitigate any hardship Master Call might suffer if the Court denies the injunction.

Conversely, if the Court grants the injunction, then WDT will be unable to meet its outstanding financial obligations, because it relied on Master Call's monthly payments and would be precluded from selling its collateral to supplement its lost income. Granting the injunction would also allow Master Call to continue receiving the benefits of the APA while excusing performance of its end of the bargain. This would severely disadvantage WDT only to prevent a contrived harm that is avoidable through less drastic means. Under these circumstances, the balance of hardships does not tip "decidedly" in favor of granting the injunction, and thus Master Call's motion should be denied.

    D.    <u>Master Call must post a bond if the Court issues the injunction.</u>

"Rule 65(c) states in mandatory language that the giving of security is an absolute condition precedent to the issuance of a preliminary injunction. It imports no discretion to the trial court to mitigate or nullify that undertaking after the injunction has issued." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 558 (2d Cir. 2011) (quoting *Atomic Oil Co. of Okla. v. Bardahl Oil Co.*, 419 F.2d 1097, 1100–01 (10th Cir. 1969)); Fed. R. Civ. P. 65. The "bond requirement … assures the

14

enjoined party that it may readily collect damages … in the event it was wrongfully enjoined, and that it may do so without further litigation and without regard to *the possible insolvency of the plaintiff.*" *Nokia Corp.*, 645 F.3d at 556–57 (emphasis added). Under this rule, not only is Master Call required to post a bond, but a bond is especially appropriate because the injunction would be predicated on Master Call's potential insolvency.

"When setting the amount of security, district courts should err on the high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000). "An error in setting the bond too high thus is not serious …. [but] an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond. *Id.*

Here, the Court should set the bond at $2,220,000, which is the amount of the balance of the Note minus the funds currently in escrow. This amount represents the value WDT would be entitled to collect if its foreclosure rights were not enjoined. If the Court were to set a lower bond, and it is subsequently determined that WDT was wrongfully enjoined, then WDT's recovery would be capped at an amount less than it would have received through foreclosure. Thus, if the Court enjoins WDT from foreclosing to collect the amount of money it is owed, then the Court should secure that same amount with a bond, to protect against the possibility that WDT will be unable to recover it later.

Master Call knows that setting the bond at the balance of the Note is proper, because its attorney made the same argument against Master Call in a nearly identical case. In *Master Call Communications, Inc. v. World-Link Solutions, Inc., et al.*, Master Call purchased a phone company and then sued for alleged breaches and misrepresentations—just like in this case. Master Call's current counsel, Mr. Rabinowitz, was the opposing counsel in the World-Link case. When

15

faced with the prospect of an injunction preventing World-Link from foreclosing on Master Call's assets, Mr. Rabinowitz argued that Master Call was required to post a bond under Federal Rule of Civil Procedure 65(c). WLS Brief, at 37. To determine an amount of the bond, Mr. Rabinowitz argued that the court should consider the fact that if World-Link were unable to foreclose Master Call's assets, then World-Link was at risk of losing of the value of the collateral securing the payment of the balance of the purchase price. *Id*. at 40. Thus, Mr. Rabinowitz successfully argued that the amount of the bond should be the balance of the purchase price. *Id*. The same argument applies here. If Master Call seeks to enjoin the foreclosure of its assets, then it should be required to post a bond in the amount of the balance of the Note, which is $2,820,000.

## II. If the Court issues the injunction, then it should require Master Call to post a bond and deposit the escrowed funds with the Court.

If the Court finds that an injunction is necessary, then it should require Master Call to give security in an amount equal to the value of the enjoined conduct. "Rule 65(c) states in mandatory language that the giving of security is an absolute condition precedent to the issuance of a preliminary injunction. It imports no discretion to the trial court to mitigate or nullify that undertaking after the injunction has issued." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 558 (2d Cir. 2011) (quoting *Atomic Oil Co. of Okla. v. Bardahl Oil Co.*, 419 F.2d 1097, 1100–01 (10th Cir. 1969)); Fed. R. Civ. P. 65. The "bond requirement … assures the enjoined party that it may readily collect damages … in the event it was wrongfully enjoined, and that it may do so without further litigation and without regard to *the possible insolvency of the plaintiff*." *Nokia Corp.*, 645 F.3d at 556–57 (emphasis added). Under this rule, not only is Master Call required to post a bond, but a bond is especially appropriate because the injunction would be predicated on Master Call's potential insolvency.

"When setting the amount of security, district courts should err on the high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000). "An error in setting the bond too high thus is not serious …. [but] an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond. *Id.*

Here, the Court should require Master Call to give security by posting a bond for $2,220,000 and paying into the Court the $600,000 currently in escrow. This totals $2,820,000, which is the balance of the Note, or, put another way, the amount of money that WDT would be entitled to receive through foreclosure. If the Court were to set a lower bond, and it is subsequently determined that WDT was wrongfully enjoined, then WDT's recovery would be capped at an amount less than what it would have been entitled to recover through foreclosure. Thus, the Court should secure the amount WDT could presently collect, to protect against the possibility that WDT will be unable to collect that same amount later.

Master Call knows that requiring security for the balance of the Note ($2,820,000) is proper, because its attorney made the same argument in a nearly identical case. In *Master Call Communications, Inc. v. World-Link Solutions, Inc., et al.*, Master Call purchased a phone company and then sued for alleged breaches and misrepresentations—just like in the present case. Master Call's current counsel, Mr. Rabinowitz, was the opposing counsel in the World-Link case. When faced with the prospect of an injunction preventing World-Link from foreclosing on Master Call's assets, Mr. Rabinowitz argued that Master Call was required to post a bond under Federal Rule of Civil Procedure 65(c). WLS Brief, at 37. To determine an amount of the bond, Mr. Rabinowitz argued that the court should consider the fact that if World-Link were unable to foreclose on Master Call's assets, then World-Link was at risk of losing of the value of the

collateral securing the payment of the balance of the purchase price. *Id.* at 40. Thus, Mr. Rabinowitz successfully argued that the amount of the bond should be the balance of the purchase price. *Id.* The same argument applies here. If Master Call seeks to enjoin the foreclosure of its assets, then it should be required to give security in the amount of the balance of the Note. This can be accomplished by requiring Master Call to post a bond of $2,220,000 and to deposit the $600,000 that is currently in escrow into the Court.

The $600,000 that is currently in escrow should be deposited into the Court, because the current escrow arrangement is inappropriate. Master Call initiated this suit to get a declaration that it was not required to make monthly payments to WDT under the Note and Security Agreement; but it has since decided to forego judicial approval and make the payments into an escrow account managed by its attorney. WDT maintains that Master Call should be making payments directly to WDT and not into escrow, because Master Call's allegations against WDT do not excuse its contractual performance. But to the extent the funds are escrowed, they should be deposited with the Court. Fed. R. Civ. P. 67. Mr. Rabinowitz is currently managing the escrow account. He is Master Call's fiduciary and WDT's adversary. This arrangement provides WDT with no meaningful security. Depositing the funds with the Court will ensure that neither party is prejudiced by the other party's exclusive control over the contested property.

## CONCLUSION

The Court should deny Master Call's request for a preliminary injunction because Master Call is not actually threatened with irreparable harm. If the Court denies the injunction, Master Call can avoid the alleged irreparable harm by resuming monthly payments to WDT and continuing its suit for money damages. If the Court does issue the injunction, however, then the Court should require

Master Call to post a bond in the amount of $2,220,000 and deposit with the Court the $600,000 that is currently escrowed.

                                              Respectfully submitted,

Dated: New York, New York        FOX ROTHSCHILD LLP
       July 20, 2017

                                        By: _____
                                            Ernest Edward Badway, Esq.
                                            Fox Rothschild LLP
                                            101 Park Avenue, 17th Floor
                                            New York, New York 10017
                                            Telephone: (212) 878-7900
                                            Facsimile: (212) 692-0940

                                            Mark A. Goodman, Esq.
                                            Mark A. Platt, Esq.
                                            Michael H. Borofsky, Esq.
                                            Fox Rothschild LLP
                                            Two Lincoln Centre
                                            5420 LBJ Fwy., Suite 1200
                                            Dallas, Texas 75240
                                            Telephone: (972) 991-0889
                                            Facsimile: (972) 404-0516

                                            *Attorneys for Defendants*